# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| In Re:  Philip Nimoityn, M.D., | : | Civil Action No. 21-cv-02709 |
| Debtor. | : | |

_____

| | | |
|---|---|---|
| | : | |
| PHILIP NIMOITYN, M.D., | : | Bankruptcy No. 20 -144667 |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTINE C. SCHUBERT, | : | |
| In her capacity as Chapter 7 Trustee | : | |
| for the Estate of Philip Nimoityn | : | |
| | : | |
| Appellee. | : | |

_____

## MEMORANDUM OPINION

**Gallagher, J.**                                          **February 22, 2022**

## I.      INTRODUCTION

Philip Nimoityn ("Appellant") appeals from an Order entered by the United States Bankruptcy Court for the Eastern District of Pennsylvania on June 10, 2021, denying his Notice to Convert from Chapter 7 to Chapter 11. The question in this appeal is whether the Bankruptcy Court erred in denying Appellant's Notice to Convert because it was done in bad faith. Upon review, the Bankruptcy Court's decision is affirmed.

## II.      BACKGROUND

On November 17, 2020, Appellant filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Order at 9, ECF No. 1; Appellant's Brief ("AAB") at 4, ECF No.

5; Appellee's Brief ("AEB") at 4, ECF No. 9. On January 28, 2021, the Appellant filed a Notice to Convert from Chapter 7 to Chapter 11. Order at 7; AAB at 4; AEB at 4. On February 1, 2021, the Chapter 7 Trustee filed an Objection to Appellant's Notice to Convert, asserting that he was attempting to convert to Chapter 11 in bad faith. Order at 7; AAB at 4; AEB at 4-5.

In January 2014, Appellant purchased residential real estate for over $1,400,000 in cash and titled the property solely in the name of his wife, Hillary Nimoityn (the "Transfer"). Order at 5; AEB at 4. In February 2021, the Trustee commenced an adversary proceeding against Mrs. Nimoityn to avoid and recover the Transfer as a fraudulent conveyance and seeking to vest the title to the property in the Trustee's name for the benefit of Appellant's bankruptcy estate. Order at 2; AEB at 5. Soon after the Trustee advised Mrs. Nimoityn that she was commencing litigation against her, Appellant filed his Notice to Convert. Order at 2; AAB at 6-7.

The Bankruptcy Court based its decision to deny Appellant's Notice to Convert on "the totality of the circumstances and particularly the timing of the Conversion Notice and the prejudice to creditors that would result from the conversion." Order at 9. It noted that "seeking to convert a case from Chapter 7 to another chapter to prevent a trustee from pursuing an avoidance action, particularly one that may result in 100% recovery to creditors, is indicative of bad faith." *Id*. at 8.

## III.   LEGAL STANDARDS

"Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith and the burden is on the bankruptcy petitioner to establish good faith." *15375 Memorial Corp. v. BEPCO, LP*, 589 F.3d 605, 618 (3d Cir. 2009) (citation and quotation marks omitted). "Whether the good faith requirement has been satisfied is a fact intensive inquiry in which the court must examine the totality of facts and circumstances and determine where a

2

petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *Id.* (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999)).

District courts "review the Bankruptcy Court's legal conclusions de novo and its factual findings for clear error." *In re Orexigen Therapeutics, Inc.*, 990 F.3d 748, 757 n.7 (3d Cir. 2021) (quoting *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011) (en banc)).

## IV.    DISCUSSION

Appellant presents six issues for appeal: four factual challenges and two legal challenges. The Court examines these challenges in turn.

### A.    Factual Challenges

#### 1.    Standard of Review

The overall factual challenge in this case is the Bankruptcy Court's finding of bad faith. Section 706(a) of the Bankruptcy Code provides that a "debtor may convert a case under Chapter 7 to a case under Chapter 11, 12, or 13 . . . at any time." 11 U.S.C. § 706(a). However, a Chapter 7 debtor's right to convert his or her case pursuant to § 706(a) is not absolute, but rather is subject to § 706(d). *See Marrama v. Citizens Bank,* 549 U.S. 365 (2007); 11 U.S.C. § 706(d). "Under *Marrama* bankruptcy courts have broad discretion in determining whether a debtor has acted in bad faith and the presence of bad faith is sufficient grounds to deny a debtor's motion to convert his or her case under § 706." *In re Piccoli*, 2007 U.S. Dist. LEXIS 72533, at *13 (E.D. Pa. Sept. 27, 2007). Although *Marrama* dealt with a requested conversion from Chapter 7 to Chapter 13, the language of § 706(a) and the *Marrama* holding also apply when the chosen chapter for conversion is Chapter 11. *See In re Levesque,* 473 B.R. 331, 339 (B.A.P. 9th Cir. 2012); *see also, e.g., In re Hunter,* 597 B.R. 287 (Bankr. M.D.N.C. 2019); *In re Woodruff*, 580 B.R. 291, 296

3

(Bankr. M.D. Ga. 2018); *In re FMO Assocs. II, LLC*, 402 B.R. 546, 551 (Bankr. E.D.N.Y. 2009); *In re Broad Creek Edgerwater, LP,* 371 B.R. 752, 758 (Bankr. D.C.C. 2007).

The District Court may not set aside a bankruptcy court's factual findings unless they are clearly erroneous.[1] *See Fellheimer, Eichen & Braverman v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995); *see also In re Piccoli*, 2007 WL 2822001, at *10 ("A bankruptcy court's finding of bad faith will not be set aside unless clearly erroneous.")

A bankruptcy court's decision to deny a motion to convert based on a finding of bad faith is reviewed for abuse of discretion.[2] *See In re Meyers,* 491 F.3d 120, 127 (3d Cir. 2007). The Third Circuit recognizes that a bankruptcy court's finding of bad faith "is a fact intensive determination better left to the discretion of the bankruptcy court." *In re Lilley,* 91 F.3d 491, 496 (3d Cir. 1996) (citation and quotation marks omitted)*; see also In re SGL Carbon Corp.*, 200 F.3d at 159.

### a.      Factual Issues Presented

**(1)  Did the Bankruptcy Court err and/or abuse its discretion in finding that the Chapter 7 Trustee would be successful in her attempt to force the conveyance of the Appellant's spouse's residence into the name of the Appellant?**

Appellant first challenges the Bankruptcy Court's finding that "the divergent recoveries creditors would receive in Chapter 11 and Chapter 7 weigh heavily against conversion." Order at 8. That finding, Appellant argues, would be correct only if the Trustee is successful in her attempt

---

[1] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364 (1948)).

[2] "[T]he abuse of discretion standard is met only when the trial judge's decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision, or where the supposed facts found are clearly erroneous." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.,* 50 F.3d 253, 257 (3d Cir. 1995).

to establish a fraudulent conveyance. AAB at 11, 12, 28; Order at 8 ¶ 8. Therefore, his argument goes, the Bankruptcy Court erred and/or abused its discretion in assuming the Trustee will be successful in establishing the fraudulent conveyance.[3] AAB at 1, 21-23.

The Bankruptcy Court evidently assumed the Trustee would be successful in establishing the fraudulent conveyance because it included the proceeds of the conveyance in its Chapter 7 projections. It based its assumption on the available evidence, including the Trustee's theories of fraudulent activity under the Pennsylvania Uniform Voidable Transactions Act 12, Pa.C.S. §§ 5101-5110 ("PUVTA"). Order at 8 ¶ 8; AEB at 10-12. The Trustee concluded that Appellant falls into six of PUVTA's categories that establish a fraudulent conveyance. She also notes "[Appellant] received no value as a result of the transfer" so "[t]he discussion ends there." AEB at 12.[4]

The Bankruptcy Court weighed the financial, credibility, and other factors before it and came to a reasonable judgment regarding the likelihood of the Trustee's adversary proceeding being successful and the resultant recovery to creditors. This judgment is not clearly erroneous or an abuse of discretion. *See In re Ferguson,* 376 B.R. 109, 121 (Bankr. E.D. Pa. 2007) (citation omitted) (suggesting that the most important factor in evaluating the good faith of the petition is the probability of success of the debtor's plan).

---

[3] Appellant further maintains that he can establish a confirmable Chapter 11 plan even without the inclusion of the Conveyance proceeds. AAB at 27, 33; Order at 6 ¶ 6. The Bankruptcy Court recognized that based on his court testimony Appellant would have "income well beyond that disclosed in his Schedules" but noted that "this alone does not support the conversion of [Appellant's] case under the circumstances present." Order at 7 ¶ 8. Although Appellant testified to his additional available income, he "did not and has not filed amended Schedules reflecting this substantially increased anticipated monthly income." Order at 7 n.11.

[4] The Trustee asserted two theories of liability–intentional and constructive fraudulent activity. AEB at 10. The Trustee notes that Appellant falls into six of PUVTA's applicable categories establishing a fraudulent conveyance, specifically: (1) "the actual intent to hinder a creditor;" (2) "the [Appellant] retained control of the property after the transfer;" (3) "the transfer was to an insider;" (4) "the transfer was substantially all of the [Appellant's] assets;" (5) "the [Appellant] received no consideration as a result of the transfer;" and (6) "the [Appellant] was insolvent or became insolvent as a result of the transfer." AEB at 10 -12. The Trustee also noted that Appellant did not receive a reasonable equivalent value in return for transferring approximately $1,400,000 in assets to his wife. *Id.*

5

**(2)  Did the Bankruptcy Court err and/or abuse its discretion in finding that converting a case from Chapter 7 to Chapter 11 for the purpose of protecting one's residence from an attempted transfer is indicative of bad faith?**

Next, Appellant challenges the Bankruptcy Court's finding that converting his case from Chapter 7 to Chapter 11 to avoid the transfer of his residence is indicative of bad faith. AAB at 1, 25-26.

The Bankruptcy Court did not find that Appellant's attempt to protect his residence was indicative of bad faith, noting in its June 10, 2021 Order that "The Court's finding that conversion here is not in good faith under the relevant legal considerations should not be understood as a condemnation of the [Appellant's] desire to retain [his] property." Order at 8 n. 16. The Bankruptcy Court's finding of bad faith related to the *timing* of Appellant's conversion noting that it "cannot ignore the timing of the Conversion Notice which came only after [Appellant] was advised that Mrs. Nimoityn would be the subject of an adversary action . . . , leading the Court to agree with the Trustee's assessment that conversion to Chapter 11 is sought only to sidestep that litigation." *Id.* at 9 ¶ 9.

"[S]eeking to convert a case from Chapter 7 to another chapter to prevent a trustee from pursuing an avoidance action particularly one that may result in 100 percent recovery to creditors, is indicative of bad faith conversion." *Id.* at 8 ¶ 9; *see also In re Piccoli,* 2007 U.S. Dist. LEXIS 72533, at *6, 19 - 20 (affirming the bankruptcy court's ruling that the debtor's attempt to convert from Chapter 7 to Chapter 13 was not made in good faith, because the timing was suspicious given that it was sought only after the debtor learned that the Trustee intended to pursue the equity in her home and liquidation of the debtor's home under Chapter 7 would "likely substantially pay her creditors"); *see also In re Meyers* 491 F.3d 120, 125 (3d. 2007) ("we have specifically held that

6

suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in the bad faith analysis."); *In re Tamecki,* 229 F.3d 205, 208 (3d Cir. 2000); *Rickabaugh v. Rickabaugh* (*In re Rickabaugh*) 2021 Bankr. LEXIS 2173 at *8-9 (M.D. Pa. August 10, 2021) (quoting *In re Jenson,* 369 B.R. 210, 235 (Bankr. E.D. Pa. 2007) ("Ordinarily, for a debt to take on bad faith significance there must be some additional aggravating factors at issue, such as… transfer of assets beyond the reach of creditors."); *In re Joobeen*, 385 B.R. 599, 611 (E.D. Pa. 2008) ("[T]he suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in the bad faith analysis.")

This Court finds that the Bankruptcy Court, after considering relevant case law and the other evidence before it did not abuse its discretion.

### (3)  Did the Bankruptcy Court err and/or abuse its discretion in finding that the Appellant's conduct in his bankruptcy case was "atypical"?

Next, Appellant argues that he has not engaged in "atypical" behavior and the Bankruptcy Court erred and/ or abused its discretion in finding his conduct "atypical." AAB at 1-2, 17-18.

To be in bad faith, as the Bankruptcy Court found Appellant, a debtor must be "atypical."[5] Here, the Bankruptcy Court did not expressly find Appellant "atypical" pointing only to the "totality of the circumstances." Order at 9 ¶ 10. However, in its June 10, 2021 Order, the Bankruptcy Court recognized that [Appellant's] conduct must be "atypical" in order for it to find bad faith, noting "[t]he Supreme Court in *Marrama* did not expressly identify what qualifies as bad faith but emphasized that the debtor's conduct must be "atypical" as a prerequisite to bad

---

[5]"We have no occasion here to articulate with precision what conduct qualifies as "bad faith" sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be atypical." *Marrama v. Citizens Bank*, 549 U.S. 365, 383 n. 11 (2007).

faith." *Id.* at 4 ¶ 4. Therefore, because the Bankruptcy Court found Appellant to be in bad faith, it necessarily found him to be "atypical".

The Bankruptcy Court noted Appellant's argument, similar to the debtor's argument in *Piccoli*, that he does not represent the "atypical" debtor who commits a fraudulent abuse of process. Order at 6 ¶ 6. However, as in *Piccoli*, Appellant engaged in a transfer of his residence,[6] transferred his home to his family for no consideration, and sought to avoid the consequences of Chapter 7 by converting to Chapter 11 with potential prejudice to his creditors. *See In re Piccoli*, 2007 U.S. Dist. LEXIS 72533 at *21-23. The Bankruptcy Court also noted Appellant presented a far "rosier" picture of his monthly income at his hearing than in his documentation to the court or "even his own Response Brief argues." Order at 6 ¶ 7, n.10. The Bankruptcy Court found the "totality of the circumstances and particularly the timing of [Appellant's] Notice," sought "only to sidestep litigation" suspicious enough and therefore "atypical" enough to be in bad faith.[7] Order at 9.

This Court cannot find that the Bankruptcy Court, who based its ruling on the totality of the circumstances and is supported by relevant case law, abused its discretion.

> **(4)  Did the Bankruptcy Court err and/or abuse its discretion in finding that the Appellant failed to establish his burden of persuasion that his notice to convert was filed in good faith?**

---

[6] The Trustee alleges this transfer to be fraudulent. The issue of whether the transfer was fraudulent is not before this Court.

[7] Appellant told the Bankruptcy Court at his hearing that he anticipates a $60,000 bonus, an increase in enrollment in his concierge business, is newly eligible for $3,895 in monthly social security benefits and expects a $300,000 inheritance. AAB at 6. He also notes that the federal tax claims of $805,724 against him will be largely discharged leaving only $66,002. *Id.* at 27, 31, 33, 35. The Court notes that this debt will not likely be totally discharged and Appellant has not presented any documentation for these claims. *Id.* at 7-8. This Court notes that Appellant filed amended Schedules on September 9, 2021. However, the Bankruptcy Court's Order denying the Conversion Notice was entered on June 10, 2021.

Next, Appellant challenges the Bankruptcy Court's finding that he did not file his Conversion Notice in good faith. AAB at 2. The debtor has the burden of persuasion on the issue of whether their motion to convert was filed in good faith. *See Piccoli,* 2007 U.S. Dist. LEXIS 72533, at *18; *see also In re Integrated Telecom Express,* 384 F.3d 108, 118 (3d Cir. 2004).

The Bankruptcy Court found that Appellant's notice was filed in bad faith after considering Appellant's Schedules and other financial documentation; the timing of Appellant's conversion filing directly after receiving notice of the Trustee's adversary proceeding; Appellant's testimony at his hearing; Appellant's and the Trustee's briefings; The *Pakuris* factors and other relevant case law.[8]

The Bankruptcy Court referenced *Piccoli* where the bankruptcy court's ruling was affirmed in similar circumstances, finding a conversion to be in bad faith when it was sought only after the Chapter 7 Trustee indicated his intention to pursue the equity in the Appellant's home. The Bankruptcy Court juxtaposed Appellant's income and tax claims in his projected Chapter 11 plan against the Chapter 7 plan and concluded that the divergent recoveries of creditors "weighs heavily against conversion."

Again, this Court must make allowance for the Bankruptcy Court's credibility determinations and does not find it abused its discretion.

### B.    Legal Challenges

#### 1.    Standard of Review

---

[8] Although the Bankruptcy Court did not specifically enumerate its findings according to the *Pakuris* factors, the Court ultimately followed these guidelines while reaching its decision. *See In re Pakuris,* 262 B.R. 330, 335-36 (Bankr. E.D. Pa. 2011); *see also In re Piccoli*, 2007 U.S. Dist. LEXIS 72533 at *18-19. The *Pakuris* factors are detailed in footnote 9.

"The District Court reviews a Bankruptcy Court's legal determinations *de novo." In re Olick*, 466 B.R. 680, 689 (E.D. Pa. 2011) (quoting *In re Am. Classic Voyages Co.* 405 F.3d 127, 130 (3d Cir. 2005)).

### a.  Legal Issues Presented

**(1)    Did the Bankruptcy Court err and/or abuse its discretion in applying the incorrect standard to determine Appellant's good faith in converting his bankruptcy case to one under Chapter 11?**

Appellant argues that the Bankruptcy Court applied the incorrect legal standard to determine bad faith. AAB at 2. In the Third Circuit, bankruptcy courts reviewing motions to convert under § 706(a) follow the "totality of the circumstances" analysis for bad faith articulated in *In re Lilley. See In re Lilley,* 91 F.3d 491, 496 (3d Cir. 1996).[9]

Here, the Bankruptcy Court did not err – it applied the correct *Lilley* "totality of the circumstances" standard in denying Appellant's conversion, noting it made its determination "based on the totality of the circumstances." Order at 9 ¶ 9.

**(2)  Did the Bankruptcy Court err and/or abuse its discretion in finding that the Appellant's planned conversion to Chapter 11 violated the Best Interests of the Creditors Test?**

Appellant next challenges that his planned conversion from Chapter 7 to Chapter 11 violated the Best Interests of the Creditors Test. Under the Best Interest of the Creditors Test, the Chapter 11 plan proponent must establish that its plan is within the creditors' best interests. *See In*

---

[9] The "totality of the circumstances" test includes: (i) Whether the debtor is seeking to convert in good faith, including a review of facts such as the timing of the motion to convert, the debtor's motive in filing the motion, and whether the debtor has been forthcoming with the bankruptcy court and creditors; (ii) Whether the debtor can propose a confirmable plan; (iii) The impact of denying conversion weighed against the prejudice to creditors caused by allowing conversion; (iv) The effect of conversion on the efficient administration of the bankruptcy estate; and (v) Whether conversion would further an abuse of the bankruptcy process. *In re Pakuris,* 262 B.R. 330, 335-36 (Bankr. E.D. Pa. 2011).

*re W.R. Grace & Co.,* 475 B.R. 34, 114 (D. Del. 2012) ("The debtor bears the burden of proof on this inquiry."); *see also Corestates Bank, N.A. v. United Chem. Techs. Inc.,* 202 B.R. 33, 45 (E.D. Pa. 1996). To satisfy the test, a Chapter 11 plan requires that every creditor receive no less under Chapter 11 than it would in a Chapter 7 liquidation. 11 U.S.C. § 1129(a)(7)(A)(i-ii); 11 U.S.C. § 1325(a)(4).

The Bankruptcy Court considered financial, testimonial, and documentary evidence regarding Appellant's current and future income, his annual bonus, his projected increase in income from his medical practice and concierge business, and his option to start receiving social security.[10] Order at 7 n.11. The Bankruptcy Court noted that no documentation was submitted to substantiate Appellant's "rosier" testimony and contrasted the uncertain and potentially drawn-out recovery under Appellant's proposed Chapter 11 plan with the likelihood of an 100 percent payment in full under Chapter 7. Order at 8 ¶ 8.

"[T]he [bankruptcy] court need only make a well-reasoned estimate of the liquidation value that is supported by the evidence on the record." *Id.*  "[T]he debtors have the evidentiary burden to demonstrate" that their plan is feasible, "[t]heir sincerity and belief in their own ability to do so is insufficient to meet this burden." *In re S. Canaan Cellular Invs. Inc.,* 427 B.R. 44, 61 (Bankr. E.D. Pa. 2010); *see also In re McKinney,* 507 B.R. 534, 542 (Bankr. W.D. Pa. 2014). "The

---

[10] The Bankruptcy Court notes "[Appellant] testified . . . that he will be paid the $60,000 annual bonus for 2020 after March 2021." "[Appellant] currently derives $7,600 from his concierge medical practice which has since retained additional enrollees" and "contrary to the notation in his Schedule I [Appellant] no longer believes his medical practice income will decrease because of COVID 19." Order at 7 n. 11. It also notes that although Appellant is now eligible to collect social security "he has not determined" whether he will do so. Order at 7 ¶ 7. And Appellant's testimonial evidence regarding his future income presents "a far rosier picture" than his submitted Schedules and a "marked increase from the monthly disposable income disclosed in [his] Schedule I." Order at 6-7 ¶ 7. Further, "although [Appellant] testified that he expected his approximately $805,000 IRS tax bill to be reduced to $66,000, his counsel seemed to believe that once deemed dischargeable, the balance of the federal claim would not need to be paid at all, let alone the remaining nontax claims" and "[m]oreover, any such plan treatment would [necessarily] pay the claim over some extended time period." Order at 8 ¶ 8.

test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In re S. Canaan Cellular Invs. Inc.,* 427 B.R. at 61 (internal citations and quotation marks omitted).

Here, after consideration of the evidence, the Bankruptcy Court found that "the divergent recoveries creditors would receive in Chapter 11 and Chapter 7 weighs heavily against conversion." Order at 8 ¶ 8. The Court is satisfied the Bankruptcy Court did not commit an error of law or an abuse of discretion.[11]

## V.     CONCLUSION

For the foregoing reasons, the Court Affirms the Bankruptcy Court's Order of  June 10, 2021. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[11] Although Appellant does not challenge the lack of an evidentiary hearing as one of his six issues presented for appeal, he mentions it and the Court will address it. Appellant argues that the "Bankruptcy Court never held an evidentiary hearing," and "one cannot make a finding of bad faith without a full evidentiary hearing." AAB at 15-16. Generally, the Bankruptcy Court determines whether to allow a claim "after notice and a hearing."11 U.S.C. § 502(b). *Henke v. Tribune Media Co.,* 2019 U.S. Dist. LEXIS 24921, at *10 (D. Del. 2019). "After notice and a hearing" is defined in 11 U.S.C. § 102(1) as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." *Id.* "This is meant to give the Bankruptcy Court flexibility." *Id.* "Where a matter has already been adequately argued before the bankruptcy judge, and the judge determines that no further hearings are necessary, then the debtor's due process rights are not violated when the judge decides the issue without further hearings." *In re Sullivan Cent. Plaza I, Ltd.,* 935 F.2d 723, 727 (5th Cir.1991); *see also In re Lease-A-Fleet,* 1995 U.S. Dist. LEXIS 18607 at *17-19 (E.D. Pa.1995) (holding that, where the court has an adequate factual record before it, an evidentiary hearing is unnecessary); *In re Harischfeger Industries, Inc.,* 316 B.R. 616, 619-621 (Bankr. D. Del. 2003) (holding that the hearing where Plaintiff argued its case coupled with its record presented constituted adequate "notice and a hearing.")
Here, the Bankruptcy Court held a hearing where [Appellant] was sworn in as a witness and had the ability to present his case, including the opportunity to provide evidence and testify. Order at 2 ("On March 3, 2021, the Court held a hearing on the Conversion Notice, The Objection, and the Response, at which the [Appellant] testified in support of the Conversion Notice.") Appellant testified about his current and future income, his anticipated current and future federal tax, and his plans to not seek recovery of his property in Chapter 11. Order at 6-9. He was subject to cross and redirect examination and questioned by the chief judge. AEB at 15. Appellant was given a hearing and the opportunity to present his case.